# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA G. McCLELLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 11-CV-0157-CVE-TLW |
| | ) |
| COMMUNITYCARE HMO, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is Defendant CommunityCare HMO, Inc.'s Motion for Summary Judgment against Plaintiff, Teresa McClelland, and Brief in Support (Dkt. # 28). Defendant CommunityCare HMO, Inc. (CommunityCare) seeks summary judgment on plaintiff's claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA). The complaint does not specify if plaintiff alleging an FMLA interference or retaliation claim, but CommunityCare argues that it is entitled to summary judgment under either theory. Plaintiff responds that she was terminated in violation of CommunityCare's attendance policy and that she received conflicting advice about the amount of leave she had available under the FMLA, so that there are genuine disputes as to material facts precluding summary judgment.

## I.

CommunityCare hired Teresa G. McClelland as a group billing reconciliation specialist on July 29, 2002. McClelland received a copy of CommunityCare's FMLA policy immediately after being hired and each time she requested FMLA leave, and she received at least 11 copies of the FMLA policy during her employment. As required by the FMLA, an eligible employee may take

up to 12 weeks of FMLA leave within a 12 month period.[1] Dkt. # 48-1, at 2. An employee may request FMLA leave "when an employee's own serious health condition prevents the employee from performing the essential functions of the job." Id. at 3. If an employee fails to return to work upon the expiration of FMLA leave, the employee is subject to termination unless he or she receives an extension. Id. at 5. To obtain an extension of FMLA leave, the employee must submit a written request to his or her immediate supervisor and to the human resources department, and provide medical certification establishing the necessity of the extension. Id.

In March 2003, McClelland requested FMLA leave for gallbladder surgery, but she was advised that she had not been employed by CommunityCare for 12 months and was not eligible for FMLA leave. Dkt. # 28-1, at 13-14, 29-30. McClelland was aware that her request would likely be denied before she applied for FMLA leave. Id. at 29-30. McClelland requested FMLA leave twice in 2005 for surgery on her left foot, and both requests were granted. Id. at 19-20. She had surgery on her right leg in 2007 and surgery on her right knee in 2008, and she requested and obtained FMLA leave for both surgeries. Id. at 20. McClelland returned to work before her FMLA leave expired and she was able to return to her job after each period of FMLA leave. In July 2009, McClelland requested FMLA leave for knee replacement surgery scheduled for October 2009, and the surgery was originally for a left knee replacement. Id. at 23. Before the surgery could take place, McClelland injured her right knee and took 64 hours of FMLA leave in August 2009. Dkt.

---

[1] Defendant attached a copy of an older version of its FMLA policy to its motion for summary judgment. Dkt. # 28-3. Plaintiff suggests that this is a sufficient reason to deny defendant's motion for summary judgment. Dkt. # 32, at 13. Defendant has filed a copy of the relevant FMLA policy and it is substantially similar to the older version, and the summary judgment record now contains a copy of the FMLA policy applicable to this case. Dkt. # 48-1. Thus, there is no factual dispute as to the contents of defendant's FMLA policy and this is not a basis to deny defendant's motion for summary judgment.

# 28-4. She also followed the advice of her doctor to have her right knee replaced in October 2009, instead of the left knee as originally planned. Dkt. # 28-1, at 23-25. McClelland was aware when she took FMLA leave in August 2009 that it would reduce the amount of FMLA leave she would have following her knee replacement surgery. Id. at 25, 37.

On September 3, 2009, Gloria Peterson, CommunityCare's human resources manager, sent a letter to McClelland advising her how many hours of FMLA leave she would have beginning in October 2009. The letter clearly stated that the hours taken by McClelland in August 2009 would be deducted from her 480 hours of annual FMLA leave. Dkt. # 28-4. McClelland received the letter and was aware that she would have 416 hours of FMLA leave remaining after her knee replacement surgery. Dkt. # 28-1, at 42. On October 5, 2009, Peterson spoke to McClelland and again advised her that she would have 416 hours of FMLA leave remaining. Dkt. # 32-5, at 7. Peterson asked McClelland "if she thought that her doctor may be able to release her any earlier [than December 28, 2009] since she had a sit-down job, and we could possibly make accommodations for that." Id. Peterson does not recall whether McClelland asked any questions about the amount of FMLA leave she would have or her return date from FMLA leave. Id. McClelland had right knee replacement surgery on October 6, 2009 and she acknowledges that it was not an elective surgery. Id. at 66. On November 13, 2009, Peterson sent a letter to McClelland stating that she had 184 hours of FMLA leave remaining before it would be exhausted, and McClelland had to make arrangements to return to work on or before December 16, 2009. Dkt. # 28-5. Peterson noted that McClelland would have been able to take FMLA leave until December 28, 2009, if McClelland had not taken FMLA leave in August 2009. Id. McClelland did not call Peterson or any else at CommunityCare immediately after receiving the November 13, 2009 letter. Dkt. # 28-1, at 48.

3

On December 1, 2009, McClelland talked to her supervisor, Pat Hall, and Hall encouraged McClelland to take action to keep her job. Id. at 51-52. Hall advised McClelland to contact her doctor to request an appointment before December 16, 2009 and to request an extension of FMLA leave, and McClelland believed that Hall wanted McClelland to keep her job. Id. On December 3, 2009, McClelland emailed Peterson asking how she could request an extension of FMLA leave, and McClelland stated that she could not return to work until at least January 4, 2010. Peterson responded quickly and informed McClelland as to how to proceed with a request for an extended leave. Dkt. # 28-1, at 54. McClelland knew that she would have to provide medical certification explaining the necessity of the extension and an exact return date. Id. at 55. On December 3, 2009, McClelland e-mailed a request for an extended leave of absence to Candia Fields, vice president of human resources for CommunityCare:

> This is a request for an extension in my FMLA. Per my paperwork sent in from the start they state that I will be off for about 12 weeks. When my first set of papers were filled out I had plenty of time for this time frame. I do not have my next appointment until December 28, 2009, I am still doing physical thearpy [sic], and have restrictions. On the 28th it will be determined when I can return to work and what the next step is. From my understanding that as long as everything is good and going like it should be, I may be able to return back to work around January 4, 2010.

Dkt. # 28-6. McClelland did not attach a medical certification to her e-mail. Fields contacted McClelland and asked if there was any way she could return to work on December 16, 2009, even if this included work restrictions or limited hours. Dkt. # 28-1, at 57. McClelland would not agree to return in any capacity until she spoke to her doctor and would not provide a specific return date. Id. Fields sent a letter to McClelland on December 8, 2009, stating that CommunityCare could not accommodate McClelland's request for an extended leave of absence, and that her employment would be terminated if she could not return to work on December 16, 2009. Dkt. # 28-7. The letter

stated that McClelland could re-apply for employment with CommunityCare for any open position. Id. McClelland's employment was formally terminated on December 16, 2009, but the Payroll Status Change Notice stated that McClelland was not eligible to be rehired. Dkt. # 28-8. McClelland did not see her doctor until January 11, 2010. Dkt. # 28-1, at 60.

On March 15, 2011, McClelland filed this case, alleging that her employment was terminated in violation of the FMLA. Dkt. # 2. Her two page complaint does not specify if she is seeking relief under an FMLA retaliation or interference theory, but the only adverse employment action referenced in the complaint is her termination. CommunityCare filed a motion for summary judgment (Dkt. # 28), relying primarily on McClelland's deposition testimony to establish the course of events leading to her termination. McClelland responded and submitted a "Statement" contradicting her deposition testimony on several key points. Defendant claims that plaintiff is attempting to create sham fact issues by making the following statements:

> 12. I learned in late July 2009, that I would need my left knee replaced and my doctor scheduled knee replacement surgery for October 6, 2009, with follow-up appointments, including an appointment for release on December 28, 2009. Again, all these dates were scheduled in July, 2009. I told the doctor then that all these dates were contingent on CommunityCare giving me enough time off, or that it might need to be rescheduled.
>
> 15. Because I had been off some in August, 2009, when I fell and hurt my right knee, I was not sure whether I had enough FMLA time to be off for my right knee replacement. Accordingly, on the day prior to my surgery (which would have been October 5, 2009), I called Peterson and asked her whether or not I would have enough time for the knee replacement and expected recovery and Peterson assured me that I would.
>
> 16. I was somewhat confused by how CommunityCare was counting my time. I thought the forty hour elimination period where I used PTO time was not counted as FMLA. In any event, before I went out for surgery on October 6, 2009, Peterson confirmed that I had enough time to be out.

5

17. The surgeries to replace my two knees were elective-that is, they were non-life threatening and performable when convenient. If I had known in October 2009, that I did not have enough FMLA for my knee replacement then, I would have postponed the surgery until I did have enough time. I also planned to postpone the left knee replacement until I had enough FMLA time.

26. One thing I tried to mention and was stopped from mentioning [at my deposition] was the conversation on the Monday before my October 6 surgery where I called Gloria Peterson to make sure that I had enough FMLA time to have surgery and recover and she assured me that I did. See pages 146-148.

Dkt. # 32-1, at 2-4. She states that she applied for a position with CommunityCare approximately six or eight months after her termination, but CommunityCare denied ever receiving the application and quickly pulled the job posting to avoid rehiring her. Id. at 4. McClelland claims that her "brain was fried and that [her] mind was going blank" at her deposition, and that she gave inaccurate testimony. Id.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant requests summary judgment on plaintiff's FMLA claims. Due to the vague nature of plaintiff's complaint, defendant is unclear if plaintiff intended to allege an FMLA claim under a interference or retaliation theory and has briefed both theories. Plaintiff responds that there are genuine disputes as to material facts that preclude summary judgment, and her primary evidentiary basis for opposing defendant's motion is a statement (Dkt. # 32-1) attached to her response.

### A.

Defendant has raised two procedural or evidentiary issues that should be considered before any analysis of plaintiff's substantive claims. First, defendant argues that plaintiff did not allege in the complaint an FMLA claim based on a failure to rehire, and that it will be prejudiced if plaintiff is allowed to pursue such a claim. Second, defendant asks the Court to disregard certain contents

7

of the statement (Dkt. # 32-1) attached to plaintiff's response, because it conflicts with her deposition testimony and she is trying to create a sham issue of fact to avoid summary judgment.

Plaintiff claims in her statement that she applied for an open position and that she was not rehired by defendant. Dkt. # 32-1, at 4. However, plaintiff's complaint states only that she is seeking relief under the FMLA due to her termination. Dkt. # 2, at 2. While allegations not contained in the complaint but raised in response to a motion for summary judgment may be treated as a request to amend the complaint, a district court may refuse to address such a claim, especially if the defendant will be substantially prejudiced by allowing the claim to come in at this late stage of the litigation. See Orr v. City of Albuquerque, 417 F. 3d 1144, 1153 (10th Cir. 2005); Evans v. McDonald's Corp., 936 F. 2d 1087, 1091 (10th Cir. 1991) (citing Fisher v. Metropolitan Life Ins. Co., 895 F. 2d 1073, 1078 (5th Cir. 1990)) (claims raised in a response to a motion for summary judgment are not properly before the Court and need not be addressed)). Based on the complaint, the joint status report, and plaintiff's deposition testimony, defendant had no notice that plaintiff could be asserting a failure to rehire claim. Defendant will be substantially prejudiced if plaintiff is allowed to pursue a new claim at this stage of the case, because defendant has been deprived of an opportunity to conduct discovery in opposition to this claim. The Court declines to allow plaintiff to assert a failure to rehire claim.

Defendant also argues that the Court should disregard allegations made in plaintiff's statement (Dkt. # 32-1) that conflict with her deposition testimony. Dkt. # 44, at 5-7. "[A]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements. In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to create a sham fact issue."

8

Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986). To determine whether a contradicting affidavit seeks to create a sham fact issue, the Court must consider whether: "'(1) the affiant was cross-examined during [her] earlier testimony; (2) the affiant had access to the pertinent evidence at the time of [her] earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain.'" Law Co., Inc. v. Mohawk Constr. and Supply Co., Inc., 577 F.3d 1164, 1169 (10th Cir. 2009) (quoting Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 973 (10th Cir. 2001)). The Tenth Circuit requires a district court to consider whether statements in the affidavit actually conflict with deposition testimony, and the failure to make this finding results in an abuse of discretion by the district court. Id. A deposition is not a "take home examination" and a party may not substitute more artful responses to deposition questions merely by claiming that she was confused at the deposition. Burns v. Bd. of County Comm'rs of Jackson County, 330 F.3d 1275, 1282 (10th Cir. 2003).

Certain facts alleged in plaintiff's statement (Dkt. # 32-1) directly conflict with her deposition testimony, and she may be trying to create a sham fact issue. Plaintiff clearly stated in her deposition that the knee replacement surgery was not elective. Dkt. # 28-1, at 66. This conflicts with her statement that the knee replacement surgery was elective and that she could have postponed the procedure, and the Court will consider whether plaintiff is attempting to create a sham issue of fact. Dkt. # 32-1, at 3. During her deposition, defense counsel repeatedly asked plaintiff if she recalled speaking to Peterson on October 5, 2009, and she did not remember speaking to Peterson on that date. Dkt. # 32-3, at 20-21. She now has a clear memory of a conversation with Peterson on October 5, 2009, and claims that Peterson told her that she would have "enough" FMLA leave

9

to complete her recovery before returning to work. Id. at 3. However, her statement is vague as to the alleged advice given to her by Peterson on October 5, 2009, and it is not clear if there is actually a conflict. Considering plaintiff's deposition testimony and her statement, the Court will credit plaintiff's statement that she spoke to Peterson on October 5, 2009. Plaintiff could not recall such a conversation during her deposition, but she did not dispute that Peterson specifically told her how many hours of FMLA leave she had remaining. Dkt. # 32-3, at 20. However, plaintiff's statement (Dkt. # 32-1) does not support an inference that Peterson told plaintiff that she had more than 416 hours of FMLA leave remaining or that plaintiff could remain on FMLA leave until December 28, 2009. This is consistent with Peterson's deposition. Peterson testified that she spoke to plaintiff in October 2009 and advised plaintiff that she had 416 hours of FMLA leave remaining. Dkt. # 32-5, at 7. Peterson also asked plaintiff if she could return to work before a full 12 weeks of leave, even if only on a part-time basis. Id.

Considering the three Law factors, the Court finds that plaintiff is bound by her deposition testimony that the knee replacement surgery was not elective. Plaintiff's counsel chose not to cross-examine plaintiff at her deposition and plaintiff's counsel could have clarified any misstatement on plaintiff's part. The fact that she waived cross-examination at her deposition does not allow her to make a contrary statement of fact in opposition to a motion for summary judgment. Plaintiff's statement (Dkt. # 32-1) is not based on any new evidence and she expressed no confusion on this factual issue during her deposition. Thus, it is reasonable to infer that plaintiff is attempting to create a sham issue of fact by changing her deposition testimony through a statement attached to her summary judgment response. For the purpose of ruling on defendant's motion for summary

judgment, the Court finds that it is undisputed that plaintiff's right knee replacement surgery was a necessary, non-elective surgery.

**B.**

Under the FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided." 29 U.S.C. § 2615(a)(1). To establish an FMLA interference claim, a plaintiff must show "(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [her] FMLA rights." Jones v. Denver Pub. Sch., 427 F. 3d 1315, 1319 (10th Cir. 2005). Under an interference theory, an employer's intent in denying or interfering with an employee's FMLA rights is not relevant. See Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004). Nonetheless, the FMLA is not a strict liability statute, and nothing in the FMLA entitles an employee to greater protection from termination not related to her FMLA leave. Metzler v. Federal Home Loan Bank of Topeka, 464 F. 3d 1164, 1180 (10th Cir. 2006).

Plaintiff cannot establish a prima facie case of interference with FMLA rights. The amount of leave to which an employee is entitled is governed by 29 C.F.R. § 825.200. An employer is permitted to select one of the following four methods for calculating an employee's leave: (1) the calendar year; (2) any fixed twelve-month "leave-year;" (3) the twelve-month period measured forward from the date of the employee's first FMLA leave; or (4) a "rolling" twelve-month period measured backward from the date an employee first uses any FMLA leave. 29 C.F.R. § 825.200(b). Defendant utilized a "rolling" twelve-month period and plaintiff was aware of the method used to calculate her FMLA leave. Before plaintiff's surgery on October 6, 2009, defendant advised

11

plaintiff by letter that she had 416 hours of FMLA leave remaining. Dkt. # 28-4. Plaintiff now recalls that she spoke to Peterson on October 5, 2009 about the amount of FMLA leave she had remaining, and that Peterson allegedly told her that she had "enough" leave remaining. This does not show that Peterson told plaintiff that she had more than 416 hours of FMLA leave remaining, and Peterson specifically recalls that she told plaintiff the she had 416 hours of FMLA leave. Dkt. # 32-5, at 7. Plaintiff chose to proceed with the surgery with full awareness of the FMLA leave to which she was entitled, and defendant did not interfere with her right to take FMLA leave. Plaintiff received 12 weeks of FMLA leave during the 12 month period preceding her termination, and she cannot show that defendant interfered with her rights under the FMLA.

Plaintiff cites Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135 (3d Cir. 2004), for the proposition that an employer may be found to interfere with an employee's rights if it gives an employee inaccurate advice about the amount of FMLA leave an employee may take without losing his or her job. Dkt. # 32, at 16. However, plaintiff's sole evidence to support this argument is her statement (Dkt. # 32-1). As the Court has noted, plaintiff could be trying to create a sham factual issue if she is asking the Court to interpret her statement that she had "enough" time to mean that defendant made a positive assertion to plaintiff that she had a full 12 weeks of FMLA leave remaining as of October 5, 2006. Contrary to plaintiff's assertion, there is no evidence that defendant "misrepresented the state of affairs to [p]laintiff." Plaintiff was advised at least twice before her surgery on October 6, 2009 that she would have 416 hours of FMLA, and plaintiff chose to proceed with the surgery after receiving this advice. Plaintiff also argues that defendant interfered with her FMLA rights by encouraging her to take "partial" FMLA leave beginning in October 2009 for an elective surgery. She claims that she would have postponed the surgery and taken a full 12

12

weeks of leave, instead of the "partial benefit" she actually received. Dkt. # 32, at 17. This argument is meritless. Plaintiff received a full 12 weeks of FMLA leave over the course of 12 months and she did not receive a partial benefit. Plaintiff's deposition testimony also shows that her knee replacement surgery was not elective, and the Court rejects her attempt to create a sham factual issue. Plaintiff has not shown that defendant interfered with her right to take the full amount of FMLA leave, and defendant is entitled to summary judgment on plaintiff's FMLA interference claim.

The FMLA also prohibits an employer from retaliating against an employee for opposing a practice made unlawful by the FMLA. 29 U.S.C. § 2615(a)(2). FMLA retaliation claims are subject to the burden-shifting framework of McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282,1287 (10th Cir. 2007). To make out a prima facie FMLA retaliation claim, a plaintiff must show that "(1) she engaged in a protected activity; (2) [her employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." Metzler, 464 F.3d at 1171. The Tenth Circuit characterizes "the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or 'retaliatory motive' on the part of the employer." Campbell, 478 F.3d at 1287 (quoting Metzler, 464 F.3d at 1171). If plaintiff can establish a prima facie case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. Id. at 1290. The burden shifts back to the plaintiff to "show that there is a genuine dispute of material fact as to whether [the employer's] reason for terminating her are pretextual." Id. (quoting Metzler, 464 F.3d at 1172). To establish a genuine dispute of material fact as to pretext, a plaintiff cannot rely solely on temporal

proximity of her FMLA leave and the adverse employment action, and the plaintiff must offer some other evidence of retaliatory motive. Metzler, 464 F.3d at 1172.

Plaintiff can establish the first two elements of a prima facie case of FMLA retaliation, because she took FMLA leave and her employment was later terminated. Defendant argues that plaintiff cannot show a causal connection between her request for FMLA leave and her termination. Even if the Court assumes there is temporal proximity between plaintiff's protected activity and her termination, there is no evidence tending to show that defendant acted with a retaliatory motive. Defendant did not interfere with plaintiff's right to take FMLA leave and gave her accurate advice about the amount of leave she could take. Before plaintiff's surgery, Peterson advised plaintiff to consider options that would allow her to return to work before a full 12 weeks of leave, because plaintiff had already used 64 hours of FMLA leave in August 2009. Dkt. # 32-5, at 7. When it appeared that plaintiff would not be able to return to work before her leave expired, plaintiff's supervisor, Hall, encouraged plaintiff to move up the date of her doctor's appointment or to request an extended leave of absence. Dkt. # 28-1, at 51-52. Plaintiff submitted a request for leave of absence that did not comply with defendant's FMLA policy, and Fields contacted plaintiff. Instead of outright rejecting plaintiff's request, Fields asked if plaintiff could return to work for reduced hours or with restrictions to accommodate her recovery. Id. at 57. Plaintiff did not respond to Fields' inquiry and did not request an accommodation to allow her to work on less than a full-time basis. Plaintiff's request for an extended leave of absence was denied and she failed to return to work. Dkt. # 28-7. Consequently, plaintiff's employment was terminated in compliance with defendant's FMLA leave policy.

Plaintiff argues that defendant had a separate attendance policy treating an unexcused absence as an "occurrence," and that she did not have enough "occurrences" to support termination of her employment on December 16, 2009. Dkt. # 32, at 5-6. She also argues that she had three and a half days of paid time off at the time of her termination, and that her employment should not have been terminated until December 21, 2009. Id. at 7. However, these arguments do not support an inference that defendant acted with an improper motive when it terminated plaintiff's employment. The FMLA policy clearly allows defendant to terminate an employee's employment if the employee does not return to work after exhausting FMLA leave. Dkt. # 48-1, at 5. The FMLA policy does not reference defendant's general attendance policy. Instead, the FMLA policy states that "[i]f the employee fails to return to work after being released to return to work, the absence may be treated as unexcused, and the employee may be subject to discipline, up to and including termination." Id. Plaintiff had an unexcused absence after her FMLA leave expired and she had no intention of returning to work until at least January 4, 2010, and defendant's compliance with its FMLA policy is not evidence of a retaliatory motive. Plaintiff's argument concerning paid time off is equally meritless. Plaintiff did not ask to use paid time off before her employment was terminated and, even if she had made such a request, it would not have saved her job. Plaintiff claims that she could have taken time off until December 21, 2009, but she fails to mention that she did not receive medical clearance to return to work until January 11, 2010. It is clear that her employment would have been terminated even if she had asked to use her paid time off, and defendant's alleged failure to give her paid time off before terminating her employment does not show that defendant acted with retaliatory intent. Instead, the evidence shows that defendant tried to avoid terminating plaintiff's employment by encouraging her to apply for an extension of FMLA leave and to return on a part-time or

restricted basis, and there is no evidence suggesting that defendant terminated plaintiff's employment in retaliation for plaintiff's decision to take FMLA leave. Even if the Court were to assume that plaintiff could establish a prima facie case of FMLA retaliation, the evidence cited by defendant would be more than sufficient to show that its legitimate, non-discriminatory reason for terminating plaintiff's employment was not pretextual. Viewing the evidence in a light most favorable to plaintiff, summary judgment is granted to defendant on plaintiff's FMLA retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant CommunityCare HMO, Inc.'s Motion for Summary Judgment against Plaintiff, Teresa McClelland, and Brief in Support (Dkt. # 28) is **granted**. A separate judgment is entered herewith.

**DATED** this 29th day of February, 2012.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT